UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICCI and KAREN C., <br> Parents and next of friends of L.C. <br><br> Plaintiffs, <br><br> v. <br><br> BEECH GROVE CITY SCHOOLS, and <br> SOUTHSIDE SPECIAL SERVICES OF <br> MARION COUNTY, <br><br> Defendants. | Case No. 1:14-cv-00576-TWP-DML |

## ENTRY ON EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiffs', Ricci and Karen C. ("Parents"), Emergency Motion for Preliminary Injunction to Stay Hearing Decision and Enforce Stay Put Requirements (Filing No. 5). The Motion was filed pursuant to 20 U.S.C. § 1415(j), which provides in part that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The issue before the Court is whether the Parents' child, L.C.'s, current placement is Fortune Academy or Beech Grove Public Schools. The Defendants include Beech Grove City Schools and Southside Special Services of Marion County (collectively, "the School"). As explained below, the Motion is **GRANTED** and L.C. is entitled to stay put at Fortune Academy.

## I. BACKGROUND

L.C. is a 10 year old student with a complex medical history (Filing No. 1-1 at page 7). His history includes suffering a stroke in utero, numerous neurosurgeries during infancy, a diagnosis of physical disabilities, including cerebral palsy, mitochondrial disease, and he has

undergone the radical surgical procedure of hemispherectomy (a removal of the entire left cerebral hemisphere of his brain) to eliminate severe epilepsy. The surgery has caused partial blindness in his right visual sphere. He also has low average cognitive skills. L.C. was homeschooled until the 2012–13 school year.

In May 2012, his mother reached out to the School about placing L.C. in public school. In the months that followed, L.C. had a variety of evaluations, though the School did not conduct physical therapy, occupational therapy, or assistive technology evaluations as part of the multidisciplinary evaluation before L.C.'s Case Conference meeting in August 2012. At the meeting, the Case Conference Committee for the School created an Individualized Education Program ("IEP"), including half-day enrollment in the second grade at the School District's public elementary school. L.C. would have direct services, though not a full-time aide, and other accommodations. In short, after touring the proposed school and meeting with the teachers and aid, L.C. enrolled at the public school, however, there were numerous issues. His parents unenrolled him after a September 11, 2012 meeting, and unilaterally enrolled him at the Fortune Academy, a private school that specialized in instruction to students with language based learning disabilities.

The School would not agree to modify L.C's IEP to place L.C. at Fortune Academy, and L.C.'s parents requested a due process hearing. The due process hearing officer found many substantive problems with the IEP and the process that denied L.C. a free appropriate public education ("FAPE"). The officer ordered the School to identify Fortune Academy as L.C's education placement for the 2012–13 school year, to pay L.C's tuition, and to implement an IEP that placed L.C. at Fortune Academy for the 2012–13 school year. The officer further ordered that after receiving reports and evaluations in May 2013 from Fortune Academy, the School should determine if Fortune Academy provided educational benefit sufficient to support

2

continued placement, or if it could devise an appropriate IEP that would allow L.C. to transition into the public school program for the 2013–14 school year.

After the 2012–13 school year, the School offered a 2013–14 IEP in October 2013 that would place L.C. in public school. L.C.'s parents rejected the IEP and alleged that the IEP failed to consider L.C.'s private placement and would not provide a FAPE. They requested a due process hearing on the IEP. During the pendency of the proceeding, L.C. remained at Fortune Academy. A hearing was held in February 2014. The Independent Hearing Officer concluded that the School's IEP for the 2013–14 school year met the requirements of a FAPE, in that it was reasonably calculated and tailored to L.C.'s unique needs. The parents appeal this decision and on April 14, 2014 filed a Complaint seeking judicial review of the administrative decisions and orders issued by the Independent Hearing Officer. Simultaneously, Parents filed the Emergency Motion for Preliminary Injunction seeking a determination that L.C.'s current placement is Fortune Academy in compliance with "stay put" provisions.

## II. LEGAL STANDARD

"The stay-put provision has been interpreted as imposing an automatic statutory injunction." *Casey K. v. St. Anne Comm. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005). The governing statute states that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The provision is designed "to ensure that the educational needs of a child are met during the pendency of any proceedings conducted pursuant to the IDEA." *Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cnty., Ill. v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996).

## III. DISCUSSION

The stay put provision of the Individuals with Disabilities Education Act of 1990 is automatic and mandatory. In this case, the Court must determine where L.C. is entitled to stay put during the pendency of these proceedings. The Parents contend that L.C.'s current educational placement is at Fortune Academy, by virtue of the February 2013 order and subsequent August 2013 IEP which specifically placed L.C. at Fortune Academy for the 2012–13 school year. The School contends that the Fortune Academy placement was expressly limited to the 2012–13 school year, was never determined by the Independent Hearing Officer to be "appropriate," and therefore cannot be L.C.'s current placement.

Both parties cite non-binding cases to support their positions. The School relies on *Leonard v. McKenzie*, 869 F.2d 1558 (D.C. Cir. 1989). In *Leonard*, the hearing officer found procedural faults in the student's IEP, but otherwise found that public school placement would have been appropriate. *Id.* at 1564. However, due to the faults, the parents and schools had agreed to a temporary and finite placement in private school with a stated goal of transitioning the child back into public schools. The court stated that because the parents had been "on notice that the Lab School would cease to be Brandon's current educational placement once the 1985–86 school year ended . . . . DCPS is not compelled to fund appellants' unilateral decision to maintain Brandon at the Lab School during the course of his challenge to the 1986–87 placement decision." *Id.* Parents cite *Winkleman v. Parma City Sch. Dist.*, No. 1:08 CV 2398, 2008 U.S. Dist. LEXIS 112962 (E.D. Ohio Oct. 24, 2008) for support. In that case, the school argued the student's placement was expressly limited to a single school year. The court found that although the placement was for a specific year, there was no express limitation on the future placement of the student, unlike in *Leonard* where transition to public school was a stated goal.

In the absence of authoritative Seventh Circuit case law, the Court is persuaded that L.C. should stay put in the Fortune Academy placement. Importantly, the purpose of the stay put provision is to minimize disruption to the student's education. Placement at Fortune Academy completely eliminates the potential of unnecessary disruption to L.C.'s education. Furthermore, this is not a situation like in *Leonard*. Even though the 2013 hearing decision did state that the placement at Fortune Academy was for the 2012–13 school year, it did not predict or limit what L.C.'s placement in 2013–14 would be. Rather, it stated that a new IEP should be developed that explored the necessity of private placement.

Finally, at oral argument, Parents argued that the School had waived its opportunity to challenge L.C.'s stay put placement by not raising it at the time the 2013–14 IEP was appealed. Because the Court finds that Fortune Academy is the proper placement for stay put, it need not decide this issue.

## IV. **CONCLUSION**

Accordingly, the Emergency Motion for Preliminary Injunction ([Filing No. 5](#)) is **GRANTED**. L.C. is entitled to stay put at his current educational placement, Fortune Academy, during the pendency of these proceedings.

The parties are further ordered to contact the Magistrate Judge to discuss a deadline by which they will submit the certified administrative record, whether either party wishes the Court to hear additional evidence and determine a scheduling order or case management plan to expedite the resolution of this matter.

**SO ORDERED.**

Date: 07/01/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander Phillip Pinegar
CHURCH CHURCH HITTLE & ANTRIM
apinegar@cchalaw.com

Amy Ann Matthews
CHURCH CHURCH HITTLE & ANTRIM
amatthews@cchalaw.com

Alexandra Marie Curlin
CURLIN & CLAY LAW
amcurlin@flemingstage.com

Robin C. Clay
CURLIN & CLAY LAW
rclay@curlinclaylaw.com