IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICCI and KAREN C., Parents and Next of Friends of L.C., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Cause No. 1:14-CV-0576-TWP-DML ) |
| BEECH GROVE CITY SCHOOLS, SOUTHSIDE SPECIAL SERVICES OF MARION COUNTY, | ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT ADDITIONAL EVIDENCE**

Come now the Plaintiffs by counsel, Alexandra Curlin, and do hereby file this Brief in Support of their Motion for Leave to Submit Additional Evidence.

BACKGROUND FACTS

L.C. is a student eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA") due to his multiple disabilities. These disabilities include, but are not limited to, a learning disability, left-side blindness, cerebral-palsy, an orthopedic impairment, mitochondrial disorder, and gastric issues. AR 183-184[1]. This case began during the 2012-2013 school year. L.C.'s mother had previously home-schooled L.C. because she believed that his needs were too great to be accommodated in a school system. AR 184. When L.C. went into the third grade, he expressed the desire to go to school and develop friendships with kids his age. Consequently, his parents took him to their local school for

---

[1] Citations to the administrative record do not include a hyperlink because the record was filed under seal.

enrollment.  The School evaluated L.C. and developed an IEP for him.  L.C. began school at Beech Grove and it did not go well.  AR 185.  L.C.'s parents began looking for options to provide L.C. with a school-based educational experience.  Fortune Academy ("Fortune") is a private school serving students with language based learning disability as their primary disability, but who also suffer from multiple disabilities, like L.C.  AR 183.

Fortune allowed L.C. to enroll on a trial basis.  AR 185.  It ended up being a placement wherein he thrived.  AR 187.  L.C.'s parents filed their first due process request to obtain reimbursement for their initial placement of L.C. at Fortune.  AR 185.  During the first due process hearing, L.C.'s parents submitted substantial evidence regarding L.C.'s disabilities, his abilities, his school work, his experience at Fortune and his needs.  The hearing officer admitted and considered all this evidence when she ruled in L.C.'s favor.  AR 185-186.  Her first decision was issued in February of 2013.

In October of 2013, a second due process hearing was held between the Parties.  This hearing was held because L.C.'s parents disagreed with an education evaluation conducted by the Defendants.  AR 191.  When L.C.'s parents disagreed with the Defendants' evaluation, and requested an independent evaluation, Defendants filed a request for a due process hearing against the parents.  Id.  The same hearing officer presided over that hearing and she ruled in favor of the Defendants and denied Plaintiffs' request for an independent evaluation.

Also, in October of 2013, a final IEP meeting was held wherein the Defendants proposed placement for L.C. in his home public school. AR 198. L.C.'s parents disagreed with the Defendants' placement decision and filed a request for due process. The same hearing officer was again assigned to the third hearing. The hearing ensued and the hearing officer decided against L.C. L.C.'s appeal of that decision is now pending before this Court.

## SUMMARY OF THE ARGUMENT

Though each of the three proceedings was a legally separate proceeding, the facts, themes, and stories permeate through the evidence of all three hearings. The hearing officer had the advantage of having access to much more information in making her decision than is available to the Court by way of the one administrative record filed. Plaintiffs seek leave to admit evidence that the hearing officer had previously reviewed, heard, and considered, and to which she refers in her decision. The purpose of the additional evidence is so that the Court can review the evidence in its proper context, and so that it can be on equal footing with the hearing officer.

## JUDICIAL STANDARD FOR ADMITTING ADDITIONAL EVIDENCE

The standard begins with the plain wording of the IDEA. It *mandates* that Courts hear additional evidence at the request of a party. 20 U.S.C. § 1415(e)(2). Courts in the Seventh Circuit have interpreted this provision as being required when movants provide "a particularized and compelling justification for doing so." **Konkel v. Elmbrook Sch. Dist., 348 F. Supp. 2d 1018, 1022 (E.D. Wis. 2004.)** The "showing should include an explanation

3

both as why the evidence was not presented at the administrative level and why it is probative of the issues before the court." *Id.* "While the proponent need not provide a verbatim recitation of the supplemental evidence, it must provide the court with a synopsis sufficient to determine its relevance." *Id.*

In *Burlington Monticello Sch Dist. No. 25 v. George L.*, the Seventh Circuit held that additional evidence is permissible as long as the character of the hearing is not changed to the point that it becomes a trial *de novo*. **Monticello Sch. Dist. No. 25 v. George L., 102 F.3d 895, 901 (7th Cir. Ill. 1996)**.

<u>ADDITIONAL EVIDENCE TO BE SUBMITTED</u>

The evidence Plaintiffs seek leave to admit is all evidence that was previously admitted, heard, and considered by the hearing officer in previous proceedings. Additionally, all of the evidence for which Plaintiffs seek leave has been referenced by the hearing officer in the current decision on appeal. None of the evidence is repetitive, prejudicial, a surprise, nor does any of the evidence change the character of this hearing.

1. Records from Fortune Academy submitted during the first and second hearings.

The hearing officer made multiple references to the work samples the School reviewed in planning for L.C. AR 186, 187, 190, 191, 193, 211, and 217. In fact, the records provided to the School by both Fortune and L.C.'s parents become a significant basis for the hearing officer's conclusion. (See AR 217, "Had the Student's parents or staff from the Student's current private placement provided additional data or information before the proposed IEP

4

meeting…the School would have needed to re-evaluate their determination and potentially reconsider public versus private placement.")   However, the hearing officer only cited to items that the School had received after July 2013.  The School had previously made requests for records from Fortune and before the hearing, were in possession of hundreds of pages from Fortune that included significant examples of L.C.'s work; his schedule, his health records, Fortune's evaluations, and his daily performance at Fortune, even though L.C. had only attended Fortune for the 2012-2013 school year.  These items were all admitted during the first and second hearings, reviewed by the hearing officer, and referenced again in the third hearing.  For those reasons, they are admissible in this proceeding.

    2.  Hearing Officer Decision from Second/Evaluation Hearing

The hearing officer makes numerous references to her decision from the second hearing, regarding the School's evaluation.  In order for the Court to have a full understanding of those references, the decision made in that hearing is necessary.

    3.  Transcript of Defendants' Expert Witness, Dr. Julie Steck ("Steck"), from Second (Evaluation) Hearing.

The School used the same expert witness during the second and third hearings.  The hearing officer makes several references to the evidence that was put on by both the School and the Plaintiffs regarding how L.C. was performing, his needs, and how they could be accommodated at school, whether he was thriving at Fortune, and the specialized instruction necessary

for his education.  AR 184-188 190.  The hearing officer also found that Steck relied on information available to her at the time she assessed L.C.  AR 191.  The hearing officer makes multiple findings about the information the School had available at the time L.C.'s October IEP was developed and references the reason Steck did not observe L.C. at Fortune.  AR 189.  Much of this evidence comes from Steck's testimony from both hearings.  Therefore, in order for the Court to fully understand the information reviewed by the hearing officer, it is necessary that the Court be able to review Steck's testimony from the second (evaluation) hearing.

    4. Transcript of Plaintiff's Expert Witness, Dr. Jennifer Horn, from First Hearing.

During the first hearing, Plaintiffs put on evidence from their expert witness, Dr. Jennifer Horn regarding L.C.'s needs and why the public school placement was not appropriate for him.  Dr. Horn also testified as to his needs, the specialized instruction necessary for him and her opinion as to what type of school would be necessary for L.C.  Excerpts from her transcript are already in the current record and referenced in the proceedings.  The hearing officer makes several comparisons of the program the School offered in 2012 (which she found inappropriate) versus the program they offered in 2013 (which she found appropriate).  AR 207-208 and 213.  However, the hearing officer mischaracterizes L.C.'s needs and why Fortune was recommended as appropriate for him in 2012.  Because the hearing officer is referencing the arguments L.C.'s parents made regarding his needs in the first hearing and

6

comparing those arguments to the arguments being made in the current appeal, this Court will need the full context of that argument in order to determine whether her decision is arbitrary and capricious or in conformance with the evidence she had.

     5. Transcript of K.C., L.C.'s mother, from First and Second Hearings.

K.C., L.C.'s mother also testified at the previous two hearings. The hearing officer made many references to how L.C.'s parents chose placement at Fortune and his experience at the public school. AR 207-208 and 213. The facts and reasoning surrounding L.C.'s initial placement at Fortune were thoroughly explained in the first hearing and further discussed in the second and third hearings. In the first hearing K.C. expressed her concerns regarding the need for a 1:1 aide for L.C., and other accommodations that may have been necessary at that time for L.C. The hearing officer has paraphrased much of K.C.'s testimony from the previous hearings (i.e., "In the first due process hearing (HR-017-2013), the Student complained about not having a full time 1:1 aide..."[2] AR 213). K.C.'s testimony in its full context has probative value and the Court should have the same benefit the hearing officer had in evaluating this testimony.

     6. Transcript of Fortune Head of School, Janet George, from First Hearing.

The hearing offer made several references to L.C.'s placement at Fortune and that the initial placement was made on a trial basis. Ms. George,

---

[2] The Student did not actually testify during any of the proceedings; therefore, the hearing officer's references to the Student's testimony are actually references to testimony provided by K.C. on behalf of the Student.

Fortune's Head of School, is the person that made the decision to accept L.C. and determined whether Fortune could appropriately serve him.  Fortune's basis for accepting L.C. is part of Ms. George's testimony from the first hearing and is also referenced in the hearing officer's decision.  The court should have the same benefit as the hearing officer, including the ability to review the full testimony with regard to this witness and the information she provided.

Further, the hearing officer concludes, without evidence, that because L.C. adjusted to Fortune, that he should be also able to adjust to the public school.  AR 207.  In the first hearing, Ms. George testified to all that Fortune did that allowed L.C. to adjust to the environment.  This is all information to which the hearing officer was privy and this Court should have access to that same information.

    7. Transcript of Defendants' Special Education Director, Laura Hammack, from First Hearing

Laura Hammack played a substantial and significant role in developing L.C.'s IEP and testified in all three hearings.  The hearing officer makes reference to the problems the Plaintiffs had regarding the School's 2012 IEP offer and compares that to the arguments the Plaintiffs made in the hearing at issue.  AR 212-213.  Ms. Hammack's testimony from the first hearing goes in depth about the School's offer, its basis, and their consideration of Fortune.  This information was heard and considered by the hearing officer and referenced by her in the decision at issue.  AR 217.  Consequently the Court should also have access to this testimony.

8. L.C.'s Schedule from Fortune Academy

One of the items provided by Fortune in a previous discovery request by the School is L.C.'s schedule. That exhibit was admitted in the third hearing and inadvertently left out of the administrative record. The parties agree it should be in the record and bate stamped at AR 759 and AR 760.

WHEREFORE, the Plaintiffs respectfully request that this Court grant their Motion and for all other relief deemed just in the premises.

Respectfully submitted,

CURLIN & CLAY LAW

By: s/
 Alexandra Curlin
Alexandra M. Curlin, Attorney #24841-49
CURLIN & CLAY LAW,
ASSOCIATION OF ATTORNEYS
8555 Cedar Place, Dr., Ste. 112
Indianapolis, IN 46240
317-202-0301
317-536-3663
amcurlin@curlinclaylaw.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Alexander P. Pinegar
apinegar@cchalaw.com

Amy Matthews
amatthews@cchalaw.com

                                                  /s/ Alexandra M. Curlin
                                                  Alexandra M. Curlin, #24841-49