UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICCI C. and KAREN C., parents and<br>next friends of L.C., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:14-cv-00576-TWP-DML |
| vs. | ) | |
| | ) | |
| BEECH GROVE CITY SCHOOLS and | ) | |
| SOUTHSIDE SPECIAL SERVICES OF | ) | |
| MARION COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Plaintiff's Motion to Submit Additional Evidence and Setting Deadline for Plaintiffs' Principal Brief

Plaintiffs Ricci and Karen C., who are the parents of L.C., seek leave to add

to the administrative record in this action for judicial review of the decision by an

Independent Hearing Officer that an individualized education program ("IEP")

provides to L.C. a free appropriate public education in the least restrictive

environment. The defendants are Beech Grove City Schools and Southside Special

Services of Marion County, an entity that provides services to students with

disabilities in several school districts, including Beech Grove City Schools. The

court refers to both defendants as the "School."

## Background

L.C. had been home-schooled by his mother until the 2012-2013 academic year. In connection with his enrollment at Beech Grove City Schools, the School evaluated L.C. and developed an IEP for him. His parents decided that the School's programs were not satisfactory and enrolled L.C. at Fortune Academy, a private school. The parents filed a request for a due process hearing challenging the School's initial IEP and seeking reimbursement for L.C.'s private school expenses at Fortune Academy. The hearing officer, in February 2013, found in favor of L.C. She found that the School's proposed IEP for the 2012-13 academic year was insufficient and she ordered the School to reimburse the parents for the 2012-13 school expenses at Fortune Academy. The hearing officer also ordered that the School could re-evaluate L.C., which it did in June and July 2013. Neither the parents nor the School appealed the hearing officer's February 2013 decision.

When the parents and School met in August 2013 to devise an IEP for the 2013-14 academic year, the parents requested an independent evaluation of L.C. The School denied that request. A second due process hearing was held regarding the parents' request for an independent evaluation. A hearing officer (the same one who presided at the first hearing) found in favor of the School, determining that its evaluation of L.C. was appropriate. Neither the parents nor the School appealed this second decision.

In October 2013, the School finalized an IEP for L.C., which proposed placing L.C. at Beech Grove public school. The parents disagreed with that placement

decision and a third hearing was held before the same hearing officer. She upheld the School's IEP for the 2013-14 year. The appeal of that decision is the subject of this litigation.

In early September 2014, the parties filed the administrative record from the third due process hearing, identified as Hearing No. HR-018-2014. The plaintiffs request leave to submit additional evidence for the court's consideration in its review of the administrative determination by the hearing officer. They want to submit (a) transcripts of testimony that was heard by the hearing officer in the first and second due process hearings, (b) documents from L.C.'s placement at Fortune Academy, (c) L.C.'s schedule from Fortune Academy, which was an exhibit at the third hearing but inadvertently left out of the record the parties filed in early September, and (d) the hearing officer's decision from the second hearing in the summer of 2013. The School does not object to the addition of the latter two items. It objects, however, to adding the transcripts from the first and second administrative hearings and the Fortune Academy school records that were not put into evidence at the third hearing. For the reasons explained below, the court sustains the School's objections.

## Analysis

### I.    Governing Principles

Though the IDEA's judicial review provision, 20 U.S.C. § 1415(i)(2)(C), states that a court hearing an IDEA action "shall review the records of the administrative proceedings [and] shall hear additional evidence at the request of a party," this

provision does *not* require the district court "to allow all evidence proffered by a plaintiff in an IDEA proceeding." *Monticello School Dist. v. George L.,* 102 F.3d 895, 901 (7th Cir. 1996). The Seventh Circuit, in *Monticello,* ruled that the receipt of additional evidence is within the district court's discretion, which should be informed by its role to *review* the administrative hearing decision but not to conduct a trial *de novo.* In that role, the court determines whether the procedures prescribed under the IDEA were complied with and must respect the expertise of school authorities regarding educational policy by giving "'due weight' to the administrative process proceedings":

> District courts should give 'due weight' to the administrative process proceedings, and 'adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.'

*Id.* at 901 (quoting *Board of Education v. Rowley*, 458 U.S. 176, 206 (1982)). A district court must be careful not to allow additional evidence when it would "change the character of the hearing from one of review to a trial *de novo.*" *Id.* at 901.

*Monticello* provides no explicit additional guidance for a district court's acceptance of new evidence outside the administrative record (the proffered new evidence in *Monticello* did not even relate to the plaintiff's IDEA claims but to claims under a separate federal statute), but the court cited approvingly to decisions from the First and Ninth circuit courts of appeal that do provide concrete guidance. The Ninth Circuit decision, in *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993), adopted the "well-reasoned decision" of the First Circuit in *Town of*

*Burlington v. Department of Education,* 736 F.2d 773 (1st Cir. 1984), the same decision hailed by the Seventh Circuit.

In *Town of Burlington,* the First Circuit interpreted the phrase "additional evidence" in the statutory language of 20 U.S.C. § 1415(e)(2) [now codified at 20 U.S.C. § 1415(i)(2)] to mean *supplemental* evidence. In turn, "supplemental" refers generally to evidence that was not available at the time of the administrative hearing, or was improperly excluded from the hearing. 736 F.2d at 790. It does not generally encompass evidence that repeats or embellishes testimony that was admitted at the hearing, because that kind of evidence tends to change the character of the court's judicial role of giving "due weight" to the administrative proceeding. *Id.*

In practical terms, the First Circuit explained:

> The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

> * * * *

> A practical approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial. . . . In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

736 F.2d at 790-91.

Like other courts in this district, the court will let these practical principles expressed in *Burlington* guide the court's decision in this case. *See Z.F. v. South Harrison Community School Corp.,* 2005 WL 2373729 at *19 (S.D. Ind. Sept. 1, 2005) (Hamilton, J.); *R.B. ex rel. G.B. v. Bartholomew Consol. School Corp.,* 2004 WL 1087367 at *1 (S.D. Ind. May 4, 2004) (Hamilton, J.)

## II.    Testimony from Earlier Hearings

The court first addresses the plaintiffs' request to supplement the record with the following testimony from either the first or second hearing:

- Transcript of the testimony of the School's expert witness, Dr. Julie Steck, from the second hearing that considered whether the School's evaluation of L.C. was adequate or should be augmented by another's expert's evaluation. The testimony covers 102 pages.

- Transcript of the testimony of the parents' expert witness, Dr. Jennifer Horn, from the first hearing that considered the School's first IEP. The testimony covers 73 pages.

- Transcript of the mother's testimony from the first and second hearings. The testimony covers 264 pages.

- Transcript of the testimony of the head of school of Fortune Academy, Janet George, from the first hearing. The testimony covers 42 pages.

- Transcript of the testimony of the School's special education director, Laura Hammack, from the first hearing. The testimony covers 283 pages.

The same person served as the hearing officer for all three administrative hearings between the parties, and she was selected to serve for the third hearing precisely because of efficiencies in using a person already familiar with the parties and their history. She denied a motion by the School to recuse herself because of

potential bias and noted that the fact that she has been exposed in the previous hearings to information "that may have nothing to do with this case" does not indicate bias and she was picked because having the same hearing officer "saves a lot of time and money because the hearing officer is familiar with the parties and with the issues and the different matters." *See* Dkt. 30 at p. 4.

Because of the hearing officer's broad familiarity with the parties and issues, the parents contend that testimony from the first two hearings are appropriate supplements to the record because that testimony (a) was necessarily considered by the hearing officer for purposes of her third decision because she presided over those two hearings and did not need repeated information for the third hearing or (b) is necessary background for this court to understand the overall context in which testimony was taken at the third hearing.

The court finds these arguments insufficient to justify adding 750 pages of testimony into the record that were not specially brought to the attention of the hearing officer with respect to the issue considered at the third hearing. The hearing officer's decision shows that she explicitly limited her decision to whether the School's 2013-14 IEP was reasonably calculated to confer an educational benefit to L.C. She reminded the parties that issues addressed in previous hearings were not being reconsidered and involved different questions.

The hearing officer stated that the parents' claims that the School had not comprehensively evaluated L.C. to be able to determine his specific educational needs and had retaliated against L.C. because the parents had asked for an

independent evaluation of his needs were "dismissed . . . [since] those issues had already been addressed in a previous hearing." (Decision at p. 3-4, Dkt. 1-2). She noted that although the parents elicited testimony at the third hearing from an evaluator who criticized the School's evaluative process, that issue had been decided by her in the second hearing based on specific evidence considered in that hearing on that issue. Her Decision reads:

> [The parents' expert evaluator] expressed numerous criticisms of the School's 2013 multidisciplinary evaluation report. However, this [hearing officer] already rendered a decision after hearing and reviewing a full day of testimony and evidence regarding the School's 2013 multidisciplinary evaluation in a previous Due Process Hearing. .
> . .

(Decision at p. 27-28).

She also remarked that the issue before her in the first hearing concerning the appropriateness of the first IEP drafted for the 2012-13 school year and the issue before her in the third hearing concerning the second IEP drafted a year later were completely different. She said:

> During the Due Process Hearing in the extant case, the Student made numerous references to the Decision from [the first hearing.] The Student seems to either misunderstand or ignore the fact that [the first hearing] pertained to a completely different IEP drafted a full year before the proposed IEP in the current matter. . . . Statements this [hearing officer] made in the Decision from [the first hearing] reflected what the School should have considered and addressed in the August 2012 IEP based on the information they had when that IEP was drafted. The October 2013 proposed IEP was based on a much more thorough set of data from multiple evaluations performed since the August 2012 IEP had been developed. The two IEPs reflect very different sets of evaluative data and other factual information available to the Case Conference Committee at the time the IEPs were drafted.

(Decision at pp. 40-41).

These comments demonstrate to the court that the hearing officer was not as a matter of course or efficiency considering testimony or other evidence that had been introduced many, many months before in different hearings reviewing different issues, and that she expected the parties to place before her at the third hearing *all* information they wished for her to consider in evaluating the October 2013 proposed IEP.

Four of the five witnesses from the prior hearings (all except Dr. Jennifer Horn) testified at the third hearing. Thus, the parents had every opportunity to elicit from these witnesses at the third hearing the information they believed pertinent to the hearing officer's evaluation of the October 2013 proposed IEP and the process that produced that IEP. As to Dr. Jennifer Horn, her testimony at the first hearing concerned the appropriateness of the School's first IEP from August 2012, why L.C.'s needs were not met by that IEP, and why Fortune Academy was the appropriate placement at that time. Given the subject matter of her testimony, it is not surprising that the parents did not call her as a witness at the third hearing. They have made no showing here why any of Dr. Horn's testimony from the first hearing should be added to the record on review of the October 2013 IEP. The appropriateness of the August 2012 IEP is not an issue in this case and there is no indication that L.C.'s needs—as evaluated for purposes of devising the October 2013 IEP that is at issue in this case—are not adequately elucidated in the current administrative record.

The court sees no reason to depart from the general rule that the district court should not permit a party to augment the record on judicial review with testimony the party had every reasonable opportunity to put before the hearing officer for consideration. *See Town of Burlington,* 736 F.2d at 791 ("an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial"). If L.C.'s parents had identified specific pages of testimony from the first two hearings containing general background information they didn't provide at the third hearing because of their confidence the hearing officer had sufficient recall of the testimony, the court may have permitted such a modest supplement to the record. But to permit the parents to add 750 pages of testimony (and no hearing officer has that kind of recall) would tend to create a *de novo* record and undermine the court's duty to give due weight to the administrative process.

## III.  Additional Records from Fortune Academy

The parents also seek to supplement the record with certain records from Fortune Academy. Their motion does not specifically describe these records, except to say they were submitted during the first and second hearings and consist of "hundreds of pages . . . that include[d] significant examples of L.C.'s work, his schedule, his health records, Fortune's evaluations, and his daily performance at Fortune. . . ." (Dkt. 27 at p. 5). The parents state that the existence of these documents detracts from the hearing officer's criticism in her Decision that the parents and Fortune Academy had provided the School meager records after July 2013 in connection with the School's evaluative planning for L.C.'s proposed October

2013 IEP.  The parents apparently do not disagree about the hearing officer's description of the documents they did provide after July 2013; they suggest only that the hearing officer's focus on that fund of documents was unfair because of the wealth of information the School had been provided at other times.

The School objects to this supplement because it is not clear what specific records the parents wish to add.  And, they argue, the documents necessarily relate to the first IEP (which is not before the court) because it is undisputed that all records that the parents provided in response to the School's request for documents for the second IEP are part of the administrative record.  *See* Dkt. 29 at p. 8.

The court agrees with the School's position for two reasons.  One, the parents' request is too general.  Their decision not to describe each of the documents they wish to add to the record does not provide the court with information necessary for assessing their importance to evaluating the School's 2013-14 IEP and the process that produced that IEP.  Two, the parents have not provided any reason why they decided not to introduce these documents as evidence at the third hearing and no reason why the court should allow them to reverse that strategy now that they seek to reverse the hearing officer's Decision regarding the 2013-14 IEP.  Again, the court must respect the administrative process and guard against a party's reserving evidence for a court when they declined to allow its evaluation in the administrative hearing by educational experts.  *See Town of Burlington,* 736 F.2d at 791 ("court should weigh heavily the important concerns of not allowing a party to undercut the

statutory role of administrative expertise [and] the unfairness involved in one party's reserving its best evidence for trial").

## Conclusion

The plaintiffs' motion (Dkt. 27) to supplement the administrative record is GRANTED IN PART AND DENIED IN PART. The Decision from the second hearing (HR-007-2014) and the student's schedule from Fortune Academy are added to the record. The plaintiffs must assign appropriate Bates numbers to those documents and file them with the court within seven days. That filing may be under seal. The plaintiffs' request to supplement the record with transcripts of testimony from the first and second hearings and with Fortune Academy records from the first and second hearings that were not admitted at the third hearing is DENIED.

The deadline for the plaintiffs to file their Principal Brief (*see* Dkt. 22) is **December 18, 2014.** Briefing shall otherwise proceed as described at Dkt. 22.

So ORDERED.

Dated:  November 26, 2014

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system